UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
STEPHANIE SANDOR,

                       Plaintiff,

        - against -

SAFE HORIZON, INC.,

                       Defendant.
--------------------------------------------------------X

                                            MEMORANDUM
                                            <u>AND ORDER</u>
                                            08-CV-4636 (ILG)

*GOLD, S., U.S.M.J.*:

## <u>Introduction</u>

      Plaintiff Stephanie Sandor ("Sandor" or "plaintiff") brings this action against her former employer, Safe Horizon, Inc. ("Safe Horizon" or "defendant"), alleging that defendant unlawfully discriminated against her on the basis of her gender and race. More specifically, plaintiff contends that defendant: 1) discriminated against her on the basis of her gender and race by failing to promote her in violation of Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. § 2000e *et seq.*; 2) discriminated against her on the basis of her race by failing to promote her in violation of 42 U.S.C. § 1981; and 3) discriminated against her on the basis of her gender in violation of the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d), and Title VII, by paying her less than a male co-worker for doing the same work. Plaintiff also brings a Title VII claim based upon an alleged disparate impact of defendant's policies and procedures and a common law claim for intentional infliction of emotional distress.

      Safe Horizon has moved for summary judgment on each of plaintiff's claims pursuant to Federal Rule of Civil Procedure 56. Plaintiff has cross-moved for summary judgment on each of her claims and, in addition, has filed a motion to strike certain evidence submitted in connection

with defendant's motion for summary judgment. For the reasons that follow, plaintiff's motion to strike is denied. Defendant's motion for summary judgment is granted in part and denied in part and plaintiff's cross-motion for summary judgment is granted in part and denied in part.[1]

**Facts**

The facts are derived from the parties' Local Rule 56.1 statements and the exhibits, depositions and affidavits submitted by the parties in connection with the pending motions.[2]

1. <u>Background</u>

Safe Horizon is a nonprofit organization that provides "support and advocacy for victims of crime and abuse." Safe Horizon, *http://www.safehorizon.org/index/about-us-1/who-we-are-52.html* (last visited January 7, 2011). In July of 2009, Safe Horizon employed about 720 staff members. Johnson Dep. 186, Docket Entries 7-10, 7-11, 7-12. Plaintiff Sandor, a Hispanic female, worked in Safe Horizon's Human Resources Department. The essence of plaintiff's claim is that another employee, a black male, was hired after plaintiff at a higher salary than plaintiff was earning, and was then promoted to a senior position over plaintiff even though plaintiff was more qualified.

2. <u>Plaintiff's Employment at Safe Horizon</u>

Plaintiff was hired by Safe Horizon as a Recruitment Coordinator in the Human Resources Department in December 2001. Def. 56.1 ¶ 10, Docket Entry 8.[3] She was promoted to Human Resources Manager in January 2005. *Id.* ¶ 12. In January 2007, plaintiff applied for a promotion to Senior Director. *Id.* ¶ 44; Pl. Senior Director App., Docket Entry 18-14. George

---

[1] Jurisdiction to decide the motions is based on the consent of the parties. Docket Entry 10.

[2] Plaintiff's exhibits in opposition to defendant's motion for summary judgment and in support of her cross-motion for summary judgment are the same. To simplify matters, I refer only to the exhibits at Docket Entry 18 submitted in opposition to defendant's motion.

[3] Citations to a party's Rule 56.1 Statement incorporate the adverse party's response.

Johnson ("Johnson"), Vice President of Human Resources, declined to promote plaintiff. Def. 56.1 ¶ 47. Plaintiff resigned from her employment with Safe Horizon and accepted a higher-paying position with the National Resources Defense Council in August of 2007. Def. 56.1 ¶ 48.

As Human Resources Manager, plaintiff provided advice and support to various Safe Horizon departments run by approximately 40-45 managers and directors. *Id*. ¶ 13. Plaintiff also worked on defendant's Domestic Shelter Programs Task Force ("Task Force"), an initiative undertaken to reorganize the way the Safe Horizon shelters were run. *Id*. ¶ 24. Plaintiff's responsibility on the Task Force was to help with recruitment and prevent high staff turnover. *Id*. As part of the Task Force, plaintiff attended bi-weekly meetings with managers of the shelters to instruct them on human resources policies and procedures. *Id*. ¶ 25.

From the time she was hired until September 2006, plaintiff reported to Frederica Robinson ("Robinson"), then Senior Director of Employee Relations. *Id*. ¶ 11; Robinson Dep. 14, Docket Entry 7-13. According to Robinson, Sandor exceeded expectations in some areas and, in areas where she needed improvement, plaintiff was learning and developing. Robinson Dep. 15-16. Plaintiff also reported to Anne Collins ("Collins"), Senior Director of Compensation and Employee Relations, for approximately six months. Collins Dep. 7-8, Docket Entry 7-9. Collins testified that plaintiff was very competent, had a good grasp of human resources law, enjoyed positive relationships with her managers, and was "pitch perfect" during counseling sessions. Collins Dep. 37-38. Joseph Posner ("Posner"), Human Resources Information Systems Manager, worked with plaintiff from 2002 until she resigned, and similarly testified that plaintiff was very competent, that she understood human resources, and that she worked well with the programs at Safe Horizon. Posner Dep. 6-8, 10, Docket Entry 7-14.

Plaintiff reported to Johnson for a few months before she left Safe Horizon in August 2007. Johnson Dep. 49-50. Johnson testified that plaintiff was "meeting the standards" and was "okay in the job she was in." *Id*. at 36, 163. Johnson also worked with plaintiff on the Task Force and observed that she was not properly prepared for meetings and did not pay sufficient attention to detail in that context. *Id*. at 94-95, 101-02.

Scott Millstein ("Millstein"), defendant's Chief Operating Officer, also worked with Sandor on the Task Force and was familiar with Sandor's performance in providing advice to various departments. Millstein Aff. ¶¶ 4, 7, Docket Entry 7-15. Millstein stated in an affidavit that Sandor's performance on the Task Force was "poor" and that "she had to be reminded to follow up on simple tasks." *Id*. ¶ 8. In addition, Millstein stated that plaintiff "did not demonstrate the capacity to independently counsel senior managers or command their respect" and "lacked the initiative to respond to their needs in a timely manner." *Id*. ¶ 6.

Plaintiff's written performance evaluations from October 2004, August 2005, February 2006, and April 2007, all indicated that plaintiff was almost without exception meeting or exceeding expectations in all relevant categories. *See* Pl. Performance Reviews, Docket Entries 18-8, 18-9, 18-10, 18-11. Johnson prepared plaintiff's final performance evaluation in April 2007. Pl. Performance Review dated 4/25/07, Docket Entry 7-16. Johnson's summary of plaintiff's performance states, in pertinent part, that Sandor "is knowledgeable of the work that must be accomplished and adept at the administrative implementation. She has a wealth of education to compliment [sic] her human resource foundation." In addition, Johnson identified "building/developing customer relationship[s]" and "build[ing] customer confidence in her advice and counsel" as two areas where plaintiff required "continued growth and development." *Id*.

Plaintiff testified that her performance reviews with Robinson and Johnson were positive and that she did not receive any negative feedback. Def. 56.1 ¶ 15. Johnson, however, testified that he orally communicated to plaintiff during a performance review that he had received complaints from certain managers about her performance, but acknowledged that these complaints were never memorialized in writing. Johnson Dep. 158-59.

3. Brown's Employment at Safe Horizon

Safe Horizon hired Richard Brown, a black male, in June 2006. At the time, Brown was unemployed and Johnson, who knew Brown, was aware that Brown was looking for employment. Brown Dep. 7, 15, Docket Entries 7-7, 7-8; Brown Employment Application, Docket Entry 7-17 (indicating that Brown was referred to Safe Horizon by his "friend/associate" Johnson). Abigail Saunders ("Saunders"), an Employee Relations Manager, was going out on maternity leave and Safe Horizon was looking to hire a temporary replacement. Robinson testified that Johnson, her boss, gave her Brown's resume, told her that he knew Brown well, and suggested that Brown would be a good candidate for the temporary position. Robinson Dep. 35-36. Robinson hired Brown for the temporary position on or about June 14, 2006. Def. 56.1 ¶¶ 29-30; Robinson Dep. 36.

Brown, like Sandor and Saunders, was responsible for supporting various Safe Horizon departments and programs. Def. 56.1 ¶ 31. Johnson ultimately decided to keep Brown on as a permanent employee at Safe Horizon. Id. ¶ 32. Brown was promoted to Senior Director in either January 2007 or May 2007. See Brown Personnel Forms, Docket Entry 18-19.

Brown reported to Robinson and Johnson. Robinson testified that Brown was "not as skilled in understanding and in the application of [Safe Horizon's] employee re[tention] policy and . . . [human resources] law as he needed to be in order to do the work that he was doing."

Robinson Dep. 12-13.  Posner, who interacted with Brown in the Human Resources Department, stated that Brown "didn't know the main things of HR," that it took from several months to a year for Brown to learn how to work the human resources database, and that Brown did not enforce basic human resources guidelines.  Posner Dep. 17, 20, 25.  Collins, who also worked with Brown, stated that Brown "never had a grasp on our compensation system."  Collins Dep. 39-40.  Collins expressed her concerns about Brown in an email she sent to Johnson on July 23, 2007, in which she asked Johnson to speak with Brown about his "inability or unwillingness to understand, advise on or have his units adhere to established policies and procedures and practices."  Collins Email, Docket Entry 18-21.

Johnson prepared Brown's written evaluation dated October 16, 2007.  Johnson found that Brown was meeting and often exceeding his goals.  Brown Performance Review, Docket Entry 18-20.  In the section of the evaluation entitled "Supervisor's Overall Summary," Johnson noted that Brown "works very well with all senior managers and peers" and that, although Brown "still [has] more to learn," he was "devot[ing] time and effort to improving his skills . . . ."  *Id*.  Brown testified that Johnson orally expressed his "concerns" to him about his performance.  Brown Dep. 93-95.

4.  Plaintiff's Education and Prior Work Experience

Plaintiff holds a Bachelor of Arts from St. Lawrence University in Political Science and Spanish, and completed a Master's of Science in Human Resources Management in 2004 while working at Safe Horizon.  Def. 56.1 ¶ 33.  In addition, plaintiff is a certified mediator and has taken a variety of human resources certification courses.  Sandor Dep. 7-8, Docket Entry 7-6.  Beginning in 1998 and continuing until her employment with Safe Horizon in 2001, plaintiff

worked primarily as a recruiter for employment and advertising agencies. Pl. Resume, Docket Entry 18-7.

5. Brown's Education and Work Experience

Brown graduated from high school and completed certificate programs from Columbia University's Institute for Not-for-Profit Management and the Zenger Miller Frontline Leadership. Def. 56.1 ¶ 37; Brown Resume, Docket Entry 7-17. According to Brown's resume, he worked as a manager and assistant director of human resources for two hotels from 1996-2000 and as the director of quality assurance at a third hotel from 2000 to 2002. Brown served as Director of Human Resources/Chief Business Officer of the Cathedral of St. John the Divine ("The Valley"), a nonprofit organization, from 2002 to 2006. Brown stated that his responsibilities at The Valley included "oversight [of the] HR department that was being developed," handling leases, negotiating agreements with vendors, and supervising the information technology and facilities departments. Brown Dep. 12-14. Brown was laid off from The Valley when it ceased operating in 2006. Brown Dep. 7.

6. Salaries

Brown, Saunders and plaintiff were all Human Resources Managers in June 2006. Def. 56.1 ¶ 9. At the time, plaintiff was receiving an annual salary of $47,577.98 as a 100% full time employee. Before she went out on maternity leave, Saunders was receiving $44,752.25 as a 100% full time employee. *Id*. ¶ 9. Brown was hired in June 2006 as an 80% full time employee, meaning he worked from Monday to Thursday, at a salary of $44,752.00. *Id*. ¶¶ 9, 30. The 100% full time equivalent of Brown's salary would have been $55,940.00. *See* Brown Personnel Forms at 2; Johnson Dep. 180.

Johnson determined Brown's starting salary. Johnson decided to pay Brown a higher salary than plaintiff and Saunders based upon Brown's experience "working with large populations in a hotel management situation and managing human resources . . . at The Valley." Johnson Dep. 183-84. He testified that he felt that Brown's salary was "equal" given the work experience he brought to the position. *Id.* at 181. Johnson also acknowledged, however, that he did not discuss in detail the experience Brown had managing people at his previous job and how it might compare to the experience of the managers already employed at Safe Horizon. *Id.* at 184-89.

7. Restructuring of the Human Resources Department/Senior Director Position

Johnson began restructuring the Human Resources Department in late 2006 with a senior team that included Vice President of Shelters Sal Uy ("Uy"), Senior Vice President of Child Advocacy Center Department Nancy Arnow ("Arnow"), Senior Vice President of Courts and Community Centers Department Paula Calby ("Calby"), and Millstein. Def. 56.1 ¶ 38. A proposed reorganizational chart, prepared by Johnson on October 11, 2006, indicates that, among other things, defendant sought to create one new human resources position: Senior Director of Employee Relations & Team Management Consulting. Reorganizational Chart, Docket Entry 18-26. Brown's name appears in the chart under the title of this new position. In the chart, both plaintiff and Saunders are listed as remaining in their current positions as Managers, with plaintiff reporting to Robinson and Saunders reporting to both Brown and Collins. *Id.* Defendant alleges that, contrary to what was listed in the reorganizational chart, the restructuring involved a number of different proposals and included two new Senior Director positions. Def. 56.1 ¶ 40.

In late 2006, Safe Horizon posted an internal job announcement for the Senior Director position and both plaintiff and Brown applied for the position. As discussed below, Brown was ultimately awarded the promotion to Senior Director. Robinson left the Human Resources Department in July or August of 2007 to work in another Safe Horizon department. Robinson Dep. 5-8. Madeline Perez, a Hispanic female, was hired to replace Robinson as Senior Director in September 2007. Def. 56.1 ¶ 9; Robinson Dep. 61.

     a.   *Plaintiff's Application*

Plaintiff applied for the Senior Director position via email to Johnson, as requested in the posting, on January 2, 2007. Pl. Senior Director App. After applying for the position, plaintiff had a brief meeting with Johnson. Sandor Dep. 71-72. According to plaintiff, Johnson told her that, although she had the "knowledge, skills and educational background to fulfill the Senior Director position," Johnson had decided to promote Brown and that Brown can "learn as he goes." Sandor Dep. 73.

Johnson testified that the reason he did not promote plaintiff was because Millstein informed Johnson that senior staff members were complaining about plaintiff's performance. Johnson Dep. 81-83. Johnson also stated that Uy, who worked with plaintiff on the Task Force, told Johnson that Sandor lacked attention to detail. *Id*. at 93-94. In addition, Johnson testified that he received complaints from staff members that Sandor's communication style was "abrupt and abrasive" and that she was "not spending enough time with the programs." *Id*. at 102-05.

Johnson also stated that Robinson advised him that plaintiff was not ready for promotion to the Senior Director level. Johnson Dep. 77-78. Robinson, however, denied saying this to Johnson, Robinson Dep. 35, and in fact testified that she would have recommended plaintiff's promotion if Johnson had asked, Robinson Dep. 61-62. Robinson did tell Johnson that plaintiff

"would need a little coaching and support in order to be really effective, really solid in the job," but that with the "appropriate coaching and support," plaintiff would be ready for the Senior Director position. Robinson Dep. 62-64.

      b. *Brown's Application*

Brown saw the Senior Director position posted online, but could not remember how he applied for the position. Brown Dep. 59-62. Brown did recall that he and Johnson discussed the restructuring of the human resources department and the creation of a new Senior Director position, but could not remember when the discussion took place. *Id*. at 65-66. Brown was promoted in either January 2007 or May 2007.[4]

Defendant contends that Brown was promoted because of the positive feedback Johnson received from the senior management team regarding Brown's performance. Def. 56.1 ¶ 50. *See also* Robinson Dep. 19-20 (testifying that Johnson told her that Uy, Arnow, and Calby, were all in favor of promoting Brown); Collins Dep. 37 (testifying that Johnson told her that "certain members of the senior team liked" Brown and that was why Johnson promoted him). The evidence indicates, however, that some high-level directors and managers opposed Brown's promotion. Robinson, for example, told Johnson that she was concerned about Brown's promotion because of the difficulty he had understanding certain human resources policies. Robinson Dep. 24-25. Similarly, Collins testified that, during the course of "50 to 60"

---

[4] The parties dispute the date Brown was promoted and there is conflicting documentary evidence in the record. Defendant contends that Brown was promoted on May 1, 2007. Def. 56.1 ¶ 54; Brown Dep. 64. Plaintiff contends that, although Brown's promotion was not officially announced until May 2007, he was in fact promoted on January 1, 2007. Pl. 56.1 Response ¶ 54. In support, plaintiff cites Brown's personnel folder. Specifically, a personnel action form, dated January 1, 2007, indicates that Brown's title is "Senior Director." However, another personnel action form indicates that Brown was promoted from Manager to Senior Director on May 1, 2007. *See* Brown Personnel Forms. In addition, Johnson acknowledged that, as of October 2006, he had planned to promote Brown to Senior Director; however, he recalled that Brown was actually promoted in or around May 2007. Johnson Dep. 123-24, 133-36.

conversations with Johnson, she urged Johnson not to promote Brown because Brown "didn't have [a] basic human resources background, he had no grasp on human resources management. Very basic and fundamental things eluded him, it was scary." Collins Dep. 36. Moreover, Collins stated that, during a restructuring meeting, Robinson, Posner and Collins all expressed their opposition to Brown's promotion on the ground that he was having trouble functioning in his current position as Manager. Collins Dep. 28-31.

8. <u>Procedural History</u>

In September 2007, plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging that she had been discriminated against on the basis of her race and gender. Docket Entry 7-1. The EEOC dismissed plaintiff's charge and issued a notice of right to sue on September 30, 2008. Docket Entry 7-3. Plaintiff filed the instant complaint on November 17, 2008.

**<u>Discussion</u>**

1. <u>Summary Judgment</u>

Summary judgment is appropriate where "there is no genuine issue as to any material fact." FED. R. CIV. P. 56(a). An issue of fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.; see also Citizens Bank of Clearwater v. Hunt*, 927 F.2d 707, 710 (2d Cir. 1991).

In reaching a summary judgment determination, a court must resolve ambiguities and draw reasonable inferences in favor of the nonmoving party. *Coach Leatherware Co. v. AnnTaylor, Inc.*, 933 F.2d 162, 167 (2d Cir. 1991). The moving party bears the initial burden of

establishing that there are no genuine issues of material fact; if that burden is met, the non-moving party may defeat summary judgment only by producing evidence of specific facts that raise a genuine issue for trial. *Anderson*, 477 U.S. at 256; *Samuels v. Mockry*, 77 F.3d 34, 36 (2d Cir. 1996). Mere conclusory allegations are insufficient, and "[t]here must be more than a 'scintilla of evidence'" to defeat a motion for summary judgment. *Del. & Hudson Ry. Co. v. Consol. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252).

2. <u>Motion to Strike</u>

Plaintiff moves to strike certain statements from Millstein's affidavit and Johnson's deposition testimony submitted by defendant in support of its motion for summary judgment. Plaintiff contends that statements are conclusory and unfairly prejudicial statements and, in any event, inadmissible hearsay. "'The principles governing admissibility of evidence do not change on a motion for summary judgment.' . . . Accordingly, courts are free to strike or disregard inadmissible statements in parties' summary judgment submissions." *Messer v. Bd. of Educ. of City of New York*, 2007 WL 136027, at *6 (E.D.N.Y. Jan. 16, 2007) (internal citations omitted). For the reasons discussed below, plaintiff's motion to strike is denied.

Affidavits submitted in connection with summary judgment motions "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated." FED. R. CIV. P. 56(c)(4). "Accordingly, '[a] court *may* . . . strike portions of an affidavit that are not based upon the affiant's personal knowledge, contain inadmissible hearsay or make generalized and conclusory statements.'" *Primmer v. CBS Studios, Inc.*, 667 F. Supp. 2d 248, 254 (S.D.N.Y. 2009) (quoting *Hollander v. Am. Cyanamid Co.*, 172 F.3d 192, 198 (2d Cir. 1999)). However, "the Court may decline to

conduct a line-by-line analysis and simply disregard any material that does not comply with Rule 56(e) [now 56(c)(4)]." *Id.* (internal quotation marks omitted).

Plaintiff argues that paragraphs four, six and eight of Millstein's affidavit should be stricken from the record because they contain conclusory statements that are not made on personal knowledge. Contrary to plaintiff's assertion, Millstein affirms that his statements are based on personal knowledge. *See* Millstein Aff. ¶¶ 4, 7-8. Moreover, to the extent Millstein's affidavit contains "conclusory or argumentative language, the Court will not make the suggested inferences simply because [Millstein] has suggested them." *Primmer*, 667 F. Supp. 2d at 254-55. Rather, "[t]he court will peruse the documentary evidence and draw its own conclusions based on that evidence." *Servaas Inc. v. Republic of Iraq*, 686 F. Supp. 2d 346, 355 (S.D.N.Y. 2010) (internal quotation marks omitted).

Plaintiff also moves to strike paragraph five of Millstein's affidavit and various statements throughout Johnson's deposition on hearsay grounds. Both Millstein and Johnson have stated that various managers and vice presidents at Safe Horizon complained to them about plaintiff's performance. *See, e.g.,* Millstein Aff. ¶ 5; Johnson Dep. 84-88. As defendant points out, however, the statements of the managers and vice presidents are not being offered for the truth of the matters asserted – *i.e.*, to prove that Sandor performed poorly at Safe Horizon – but rather as evidence of the information Millstein and Johnson had available when they decided not to promote plaintiff. *See also Messer*, 2007 WL 136027, at *7. Millstein's and Johnson's state of mind – the information they considered when deciding to promote Brown and not to promote plaintiff – is obviously relevant because plaintiff contends that she was denied the promotion because of discriminatory animus. Accordingly, plaintiff's hearsay objection is without merit.

Plaintiff argues in the alternative that, if the statements are not stricken from the record for the reasons discussed above, than they should be stricken because their probative value is substantially outweighed by the danger of unfair prejudice. *See* FED. R. EVID. 403. "In general, in the absence of a significant showing of unfair prejudice, evidence with substantial probative value should not be excluded." *Bonenfant v. Kewer*, 2007 WL 2492030, at *3 (D. Conn. Aug. 30, 2007) (citing *Gentile v. County of Suffolk*, 926 F.2d 142, 146, 151 (2d Cir. 1991)). Plaintiff has not made a showing of unfair prejudice, particularly in the context of a summary judgment motion to be decided by the Court, sufficient to warrant striking the evidence. To the extent plaintiff argues that Millstein's affidavit does not identify the managers and vice presidents who made the challenged statements about plaintiff, or does not include details or examples to support Millstein's descriptions of plaintiff's performance and abilities, I note that plaintiff could have inquired about these specifics when questioning Millstein at a deposition. Moreover, as discussed above, the evidence has substantial probative value with respect to whether Millstein and Johnson acted with a discriminatory intent.

For all of these reasons, plaintiff's motion to strike is denied.

3. Failure to Promote

Plaintiff alleges that defendant violated Title VII by failing to promote her to the Senior Director position because she is Hispanic and female. Under Title VII, an employer is prohibited from discriminating with respect to the working conditions of any individual because of the individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). Plaintiff further claims that defendant violated 42 U.S.C. § 1981 by failing to promote her on the basis of her race. Section 1981 "outlaws discrimination with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as employment . . . ."

*Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 224 (2d Cir. 2004). However, unlike Title VII, Section 1981 prohibits discrimination only on the basis of race or ethnicity. *See, e.g., Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522, 527 (2d Cir. 1996). Both parties contend they are entitled to summary judgment on plaintiff's Title VII and Section 1981 claims.

Title VII and Section 1981 failure to promote claims are governed by the three-step burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973). *See Rumala v. New York City Transit Auth.*, 2005 WL 2076596, at *12 (E.D.N.Y. Aug. 26, 2005). The first stage of *McDonnell Douglas* requires plaintiff to establish a *prima facie* case of discriminatory failure to promote. To establish a *prime facie* case, plaintiff must show that: (1) she is a member of a protected class; (2) she applied and was qualified for a job for which the employer was seeking applicants; (3) she was denied the position; and (4) the denial occurred under circumstances giving rise to an inference of unlawful discrimination. *Klings v. New York State Office of Court Admin.*, 2010 WL 1292256, at *5 (E.D.N.Y. Apr. 5, 2010). With respect to the fourth prong, "'[a]n inference of discrimination may arise if the position remains open and the employer continues to seek applicants of the plaintiff's qualifications [ ] or if the position was filled by someone not a member of plaintiff's protected class.'" *Aurelien v. Henry Schein, Inc.*, 2009 WL 366148, at *7 (E.D.N.Y. Feb, 12, 2009) (quoting *Gomez v. Pellicone*, 986 F. Supp. 220, 228 (S.D.N.Y.1997)). *See also Zimmerman v. Assocs. First Capital Corp.*, 251 F.3d 376, 381 (2d Cir. 2001) (stating that "the mere fact that a plaintiff was replaced by someone outside the protected class will suffice for the required inference of discrimination at the *prima facie* stage of the Title VII analysis").

The Second Circuit has characterized this initial burden as "*de minimis*." *Zimmerman*, 251 F.3d at 381. Assuming it has been met, the burden shifts to the defendant to provide a

legitimate, non-discriminatory reason for denying plaintiff the promotion she sought. *Patterson*, 375 F.3d at 221. "The employer's burden is one of production, not persuasion . . . and involves no credibility assessment of the evidence." *Klings*, 2010 WL 1292256, at *6 (internal quotation marks omitted). If the defendant satisfies this burden of production, it then becomes plaintiff's burden to "demonstrate by competent evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Patterson*, 375 F.3d at 221 (internal quotation marks omitted). "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.* (internal quotation marks omitted).

   a.  *Title VII Racial and Gender Discrimination Claims; Section 1981 Racial Discrimination Claim*[5]

It is undisputed that plaintiff, a Hispanic female, is a member of protected classes, that she applied and was qualified for the Senior Director position, and that her application was denied. Accordingly, the first three elements of plaintiff's *prima facie* case are established. In support of the fourth prong of her *prima facie* case, plaintiff argues that Brown, a black male, was promoted over her to the one open Senior Director position available. Defendant contends there were two open Senior Director positions and that plaintiff was therefore not denied a promotion in favor of Brown. This dispute of fact is not a material one because, in either circumstance—whether the sole Senior Director position was filled by Brown who was outside of the protected classes to which plaintiff belonged, *or* whether a Senior Director position remained open and Safe Horizon continued to seek a candidate with plaintiff's qualifications—

---

[5] The parties rely upon the same evidence in support and defense of plaintiff's race and gender discrimination claims. Accordingly, I analyze plaintiff's race and gender discrimination claims together.

plaintiff has raised an inference of discrimination sufficient to meet her *de minimis* burden.[6] Plaintiff has therefore established her *prima facie* case.

In response, Safe Horizon has articulated a legitimate, non-discriminatory reason for deciding not to offer plaintiff the promotion. In short, defendant contends that plaintiff's performance did not merit a promotion. More specifically, defendant contends that the Senior Director position involves interaction with senior management in various departments at Safe Horizon and that plaintiff, while she may have had the educational background required for the position, lacked the necessary interpersonal skills and demonstrated a poor work ethic in her capacity as Human Resources Manager. In support of its position, defendant relies upon Millstein's affidavit, in which he states, *inter alia*, that "Ms. Sandor did not demonstrate the capacity to independently counsel senior managers or command their respect," and that her performance on the Task Force was "poor" and that "she had to be reminded to follow up on simple tasks." Millstein Aff. ¶¶ 6, 8. Defendant also emphasizes Johnson's testimony that he received complaints regarding plaintiff's performance and personally observed that Sandor lacked attention to detail on the Task Force. Thus, Safe Horizon has proffered legitimate, non-discriminatory reasons for its decision not to promote plaintiff. *See Gill v. Mount Sinai Hosp.*, 2004 WL 5461069, at *8 (S.D.N.Y. June 22, 2004) (holding that plaintiff's "lack of interpersonal

---

[6] Defendant also relies on the fact that Perez, who is female and Hispanic, was hired to fill the second Senior Director position to which plaintiff could have been promoted. Def. Mem. at 7. "[P]roof that the individual receiving the [open position] was *within* the protected class can undermine the plaintiff's attempt to establish a *prima facie* case of intentional discrimination." *Klings*, 2010 WL 1292256, at *6 (citing cases). At least in the summary judgment context, however, defendant's decision to hire Perez does not undermine plaintiff's *prima facie* case. There is a dispute of fact as to whether there was a second open Senior Director position available when plaintiff and Brown applied in early 2007. Moreover, contrary to defendant's assertion, the documentary evidence supports a finding that Perez was hired not for the position plaintiff sought that was awarded to Brown, but to replace Robinson after Robinson left the Human Resources Department in July/August 2007 and after plaintiff resigned in August 2007. *See, e.g.,* Robinson Dep. 7, 61. Thus, there is a genuine question of fact as to when the position for which Perez was hired became available and whether it was one to which plaintiff could have been promoted.

skills and confrontational attitude" was a legitimate non-discriminatory reason for terminating her employment).

The burden now shifts back to plaintiff, who must demonstrate that defendant's assertion of a non-discriminatory basis for failing to promote her was pretextual and that the decision was in fact based, at least in part, on the fact that plaintiff is Hispanic and female. Sandor, like many Title VII plaintiffs, does not offer direct evidence of unlawful discrimination. Instead, plaintiff seeks to prove her claim based upon the following circumstantial evidence: her *prima facie* case, proof that Safe Horizon's explanation for failing to promote her is false, and inferences to be drawn by comparing her qualifications for promotion with those of Brown.

The Supreme Court has held that "a plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000). "[O]nce the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision." *Id*. at 147. Nevertheless, proof that "the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason . . . is correct. . . . In other words, [i]t is not enough . . . to *dis* believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination." *Id*. at 146-47 (internal quotation marks omitted). Courts should thus make a "case-specific" assessment as to whether the plaintiff has met her burden by examining the entire record and, more specifically, considering "'the strength of the plaintiff's *prima facie* case, the probative value of the proof that the employer's explanation is

false, and any other evidence that supports [or undermines] the employer's case . . . .'"
*Zimmerman*, 251 F.3d at 381 (quoting *Reeves*, 530 U.S. at 148-49).

"[A]n employer's disregard or misjudgment of a plaintiff's job qualifications may undermine the credibility of an employer's stated justification for an employment decision." *Byrnie v. Town of Cromwell Bd. of Educ.*, 243 F.3d 93, 103 (2d Cir. 2001). Such evidence, however, should be viewed with caution, as "the court must respect the employer's unfettered discretion to choose among qualified candidates." *Id.* (internal quotation marks omitted). Moreover, the Supreme Court has emphasized "the importance of not just looking at relative qualifications, but rather considering relative qualifications in light of the entire record." *Aurelien*, 2009 WL 366148, at *12 (discussing *Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 456-58 (2006)).

The evidence in support of plaintiff's *prima facie* case is slight. As noted above, it is based upon the fact that Brown, a black male, was promoted instead of plaintiff, who is female and Hispanic. However, plaintiff has mustered substantial evidence indicating that Safe Horizon's explanation for failing to promote her is false. The only evidence provided by defendant that plaintiff performed poorly in her role as Human Resources Manager is Johnson's deposition testimony and Millstein's affidavit. With respect to Millstein's affidavit, he provides some detail as to his personal observations of Sandor on the Task Force and states, for example, that his "overall impression was that she just could not handle the project." Millstein Aff. ¶ 8. However, most of Millstein's complaints about Sandor's performance are vague and conclusory. Moreover, as Chief Operating Officer of an organization with over 700 employees, it seems unlikely that Millstein would be sufficiently familiar with plaintiff's performance to evaluate it meaningfully.

Johnson claims to have based his decision not to promote plaintiff upon complaints he received from managers and vice-presidents of the departments plaintiff supported. Clearly, complaints from others in positions of responsibility who relied on plaintiff about the quality of her work would be a legitimate basis for denying her a promotion. However, Johnson's testimony about whether he heard negative information about plaintiff from managers directly or only through Millstein is somewhat confused, and arguably inconsistent. *See, e.g.,* Johnson Dep. 84-91. In addition, Johnson could not recall the names of certain people he claims complained to him about plaintiff's performance, Johnson Dep. 90, and testified that Millstein did not identify the individuals who complained to him, Johnson Dep. 83-84. Moreover, while Johnson attributes criticism of plaintiff's performance to Robinson, Johnson Dep. 76-78, 89 (testifying that Robinson told him that plaintiff was not ready for promotion to Senior Director), Robinson, at her deposition, denied making any such statements, Robinson Dep. 35, 61-62 (testifying that she did not recommend against plaintiff's promotion and would have recommended her promotion if asked). Finally, although Millstein and Johnson both contend that vice-presidents and managers of Safe Horizon departments complained to them about plaintiff's performance, defendant has not presented the testimony of these vice presidents and managers or any documents in which their complaints were recorded.

Indeed, the documentary evidence that has been provided by the parties appears to undermine Johnson's and Millstein's assertions that plaintiff's performance was perceived to be deficient. All of plaintiff's performance evaluations—including one prepared by Johnson— indicate that she was either meeting or exceeding expectations, and there is no documentary evidence of any negative evaluations.[7] In addition, plaintiff testified that she received only

---

[7] In one performance review, there are a few notations that Sandor "inconsistently achieved objective/standard." However, these notations are far outweighed by notations that Sandor was meeting

positive feedback from Robinson and Johnson. Robinson, Collins and Posner all testified that plaintiff performed well as a manager and that she was qualified for promotion to Senior Director.

In contrast, apart from Brown's written evaluation, which Johnson prepared, there is no direct evidence in the record that Brown was meeting or exceeding expectations. For example, although Johnson contended that the "senior team" was in favor of Brown's promotion, defendant has not provided the testimony of any of the "team" members. To the contrary, Robinson, Collins and Posner all testified that Brown was struggling with his duties as a manager and that he was not a suitable candidate for promotion to Senior Director.

With respect to education, plaintiff attained her Master's Degree in Human Resources at least two years before she applied for the Senior Director position. Brown's highest level of formal schooling was high school. With respect to experience, there does not seem to be a significant difference between plaintiff and Brown. Brown worked in human resources for ten years prior to being hired by Safe Horizon in 2006; plaintiff worked as a recruiter for about five years prior to her employment with Safe Horizon and worked in human resources at Safe Horizon for about five additional years before seeking the promotion to Senior Director.

Having considered the record as a whole, I conclude that plaintiff has proffered sufficient evidence to allow a reasonable finder to conclude that defendant's stated reasons for failing to promote her were a pretext for discrimination. The lack of direct evidence to support

---

or exceeding expectations. *See* Docket Entry 18-10. Moreover, there are a few comments about areas for improvement or "continued growth." In the Section of the evaluation entitled "Year End Review," though, plaintiff's supervisor states that plaintiff "continues to be a strong performer who is currently meeting standards. . . . [Her] commitment to her work and to the department is excellent. She is a loyal and dedicated worker with skills that cover multiple areas." Thus, this evaluation cannot reasonably be understood as a serious criticism of plaintiff's performance. In fact, Johnson testified that he did not consider the fact that areas for improvement were identified in plaintiff's evaluation as indicating a "negative assessment" of plaintiff's performance and acknowledged that every employee has areas that they need to improve upon. Johnson Dep. 161-62.

defendant's assertion that plaintiff performed poorly, in contrast to substantial evidence that plaintiff performed well and was ready for promotion, presents a credibility determination properly left to a jury. *See, e.g., Zimmerman*, 251 F.3d at 382-83 (finding that a jury could infer discrimination where plaintiff "provided ample evidence of good performance and the complete absence of any negative evaluations"); *Klings*, 2010 WL 1292256, at *15 (finding that "the stark disparity between [plaintiff's] complimentary written performance evaluations, and the criticisms now being asserted . . . creates a genuine issue of fact for the jury's determination"). Moreover, even if a finder determined that certain managers and directors were critical of plaintiff's performance, those criticisms would need to be balanced against the undisputed evidence that senior personnel had serious reservations about Brown's suitability for promotion. Finally, although the difference in their levels of education does not demonstrate that "no reasonable person" could have chosen Brown for promotion rather than plaintiff, it does lend further support to the conclusion that defendant's proffered reasons for promoting Brown and not plaintiff were pretextual. *Byrnie*, 243 F.3d at 103-04 (finding that, even though the discrepancy between plaintiff's and the comparator's qualifications alone did not create a material question of fact, it nevertheless shed light on the credibility of the employer when viewed in the context of the entire record). For all of these reasons, defendant's motion for summary judgment on plaintiff's failure to promote claim is denied.

Plaintiff's motion for summary judgment on her failure to promote claim is denied as well. Plaintiff admits that she was never subjected to discriminatory remarks at Safe Horizon. Indeed, plaintiff has not presented any direct evidence of discriminatory animus. Although the circumstantial evidence of discrimination with respect to the promotion at issue is sufficient to defeat defendant's summary judgment motion, it is not so conclusive as to preclude a jury from

reasonably finding that defendant's reasons for failing to promote plaintiff, even if misguided or based on factors other than merit, were not discriminatory.

4. Equal Pay Act

Plaintiff Sandor next claims that she was unlawfully denied her right to equal pay pursuant to the Equal Pay Act. The EPA prohibits employers from discriminating among employees on the basis of sex by paying unequal wages for equal work. *See* 29 U.S.C. § 206(d)(1). "The purpose behind the enactment of the EPA was to legislate out of existence a long-held, but outmoded societal view that a man should be paid more than a woman for the same work." *Belfi v. Prendergast*, 191 F.3d 129, 135 (2d Cir. 1999). Both parties assert that they are entitled to summary judgment on plaintiff's EPA claim.

a. *Plaintiff's Prima Facie Case*

To prove a violation of the EPA, Sandor must demonstrate that: "(i) the employer pays different wages to employees of the opposite sex; (ii) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and (iii) the jobs are performed under similar working conditions." *Id.* (internal quotation marks omitted). Unlike Title VII, the EPA is essentially a strict liability statute; a plaintiff need not demonstrate discriminatory intent to prevail. *Id.* at 136.

It is undisputed that plaintiff has established a *prima facie* case. Brown was hired to replace Saunders at a salary of $44,752.00 as an 80% full time employee; the full time equivalent would have been $55,940. At the time, plaintiff was paid $47,577.98 as a 100% full time employee and, prior to her maternity leave, Saunders was paid $44,752.00 as a 100% full time employee. It is also undisputed that Brown, plaintiff and Saunders all served as Human Resource Managers and performed equal work under similar working conditions.

b. *Affirmative Defense*

Now that Sandor has established her *prima facie* case, the burden of persuasion shifts to Safe Horizon to justify the wage disparity based upon one of the EPA's affirmative defenses: "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." 29 U.S.C. § 206(d)(1). The Second Circuit has noted that, "[t]he burden of establishing one of the four affirmative defenses is a heavy one, . . . because the statutory exemptions are narrowly construed." *Ryduchowski v. The Port Auth. of N.Y. & N.J.*, 203 F.3d 135, 143 (2d Cir. 2000) (internal citations and quotation marks omitted). Therefore, Safe Horizon "'cannot attain summary judgment unless the evidence . . . on that issue is conclusive.'" *Ebbert v. Nassau County*, 2009 WL 935812, at *5 (E.D.N.Y. Mar. 31, 2009) (quoting *Torres Vargas v. Santiago Cummings*, 149 F.3d 29, 35 (1st Cir. 1998)).

Defendant contends that it should not be held liable under the EPA because its decision to pay plaintiff less than Brown was based on "factor[s] other than sex." 29 U.S.C. § 206(d)(1)(iv). "[T]o successfully establish the 'factor other than sex' defense, an employer must . . . demonstrate that it had a legitimate business reason for implementing the gender-neutral factor that brought about the wage differential." *Belfi*, 191 F.3d at 136.

Defendant Safe Horizon maintains that it had two legitimate business reasons for paying Brown a higher salary than it paid to plaintiff and Saunders. First, defendant argues that Brown was hired to fill an immediate need in the Human Resources Department that arose when Saunders went out on maternity leave. Second, defendant contends that Brown possessed "superior relevant human resources experience" that justified the higher salary. Def. Mem. 17-18, Docket Entry 9.

In support of its first argument, defendant proffers Brown's deposition testimony that he was hired on a temporary basis to replace an employee who was out on maternity leave, Brown Dep. 16, and Johnson's testimony with respect to the circumstances surrounding Saunders' maternity leave and Brown's employment. After reviewing certain documents, Johnson testified that he hired Brown to replace Saunders temporarily while she was out on maternity leave. Johnson Dep. 169-70.

This evidence is insufficient to meet Safe Horizon's burden. First, although defendant argues in its memorandum of law that it hired Brown to fill a need that was "immediate," defendant offers no evidence to support this contention. Saunders' impending maternity leave was likely known by Safe Horizon for a number of months prior to her departure; defendant has certainly not offered any evidence to the contrary. Moreover, defendant has not presented any evidence indicating that it conducted a search for other qualified candidates willing to accept the same rate of pay earned by Saunders and plaintiff but failed to find anyone. *See, e.g., David v. Comtech PST Corp.*, 2006 WL 2713936, at *17 (E.D.N.Y. Sept. 22, 2006) (finding defendant's evidence in support of its affirmative defense insufficient where there was no indication as to whether defendant knew of other available and qualified candidates who would have accepted a lower salary).

Second, Brown was unemployed at the time he was hired, and defendant has not explained why, even if its need to fill Saunders' position was "immediate," it was necessary to pay Brown a higher salary than plaintiff was earning to persuade him to accept the position. For example, there is no evidence indicating that Brown was offered the same salary being paid to Saunders and plaintiff but declined. Nor has defendant proffered evidence of Brown's salary at his previous job as some indication that Brown could reasonably have demanded the salary he

received from Safe Horizon. *See Shieldkret v. Park Place Entm't Corp.*, 2002 WL 91621, at *3 (S.D.N.Y. Jan. 23, 2002) (noting that "salary matching – payment of a higher salary to equal or exceed that of a prior job, or a competing offer – is a reasonable business tactic to . . . retain employees and justify a wage differential"). Moreover, because Brown was unemployed, defendant did not need to offer Brown higher compensation in order to "lure him away from his prior employer," a practice that has been recognized as a legitimate business reason for a wage differential. *See Drury v. Waterfront Media, Inc.*, 2007 WL 737486, at *4 (S.D.N.Y. Mar. 8, 2007).

Finally, it might arguably have been reasonable for defendant to have initially paid Brown a higher salary because he was a temporary employee and may not have been receiving other non-wage benefits.[8] However, Brown's salary was not adjusted after he became a permanent employee and presumably began receiving the same benefits as plaintiff and other permanent staff. In fact, Johnson testified that Safe Horizon provides benefits even to temporary employees after they have worked for more than two months. Johnson Dep. 170. Thus, it appears that Brown would have been receiving benefits even before he secured a permanent position with defendant. Accordingly, defendant has failed to establish that it needed to pay Brown a higher salary than plaintiff and Saunders in order to fill an immediate need.

Defendant next argues that the wage differential was justified by Brown's background and experience. More specifically, defendant emphasizes that Brown had experience working with shelter programs, and Saunders was the employee relations person responsible for Safe Horizon's shelter program.

---

[8] Collins testified that, in certain circumstances, it would be reasonable to pay a temporary employee a higher salary because the employee was not receiving other benefits. *See, e.g.,* Collins Dep. 20-21.

When an employer claims that a wage differential is based upon experience, it bears the burden to demonstrate both that the "experience is a job-related qualification for the position in question" and that the employer "based [the] higher salary on this factor." *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1312 (2d Cir. 1995), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998). According to the job posting for Brown's position, Safe Horizon was seeking a candidate with the following qualifications: "[An u]ndergraduate degree and at least three to five years delivering HR generalist services or three to five years of solid experience in at least two HR disciplines that require ongoing client interface. Masters in HR or OD a plus." Docket Entry 18-18. Brown's education includes a high school diploma and certificate programs from Columbia University's Institute for Not-for-Profit Management and the Zenger Miller Frontline Leadership. Prior to joining Safe Horizon, Brown had approximately six years of experience working in human resources for various hotels and four years as the chief business operator and director of human resources of a nonprofit organization.

It is clear that, at least with respect to his education, Brown did not possess even the minimum qualifications required for the position. According to his resume, Brown did have more work experience than the position required. Even if Brown's work experience were relevant to the vacant position that Safe Horizon needed to fill, defendant could not obtain summary judgment without conclusively establishing that Brown's experience was the reason he was paid a higher salary than plaintiff or Saunders. Johnson testified that he paid Brown a higher salary based upon Brown's "background and experience," which included "hotel management, human resources, training and some program management." Johnson Dep. 181-82. Johnson further testified that he hired Brown because he had worked with "large populations in a hotel management situation and managing human resources before at the Valley," but also

acknowledged that Brown managed only three to five staffers in the human resources department at The Valley. *Id*. at 183-84. This is particularly significant because, according to Johnson's testimony, the responsibilities of the Safe Horizon position were much more substantial; Brown was hired to provide support for approximately 700 Safe Horizon employees and was expected to interact with approximately 60 managers. *Id*. at 186. There is no indication that Brown had experience working with an organization of Safe Horizon's size. Moreover, although Brown's title at The Valley was "Director of Human Resources," Brown testified that this role involved "oversight [of the] HR department that was being developed." Brown Dep. 12-13.

Defendant also asserts in its memorandum that Johnson believed that the wage differential was justified because of Brown's "experience with shelters, and he was filling in for Ms. Saunders, who was the employee relations person for the domestic violence shelters." Def. Mem. at 17. The evidence in support of this argument consists of Collins' statement that Johnson told her that Brown "had experience with shelters and . . . could step into [Saunders's] role pretty easily." Collins Dep. 21-22. However, *Johnson* never testified that this was the reason for offering Brown a higher salary. More importantly, there is nothing in Brown's resume or his deposition transcript to support defendant's assertion that Brown had significant experience working with shelters.

Having considered all of the evidence, I conclude that defendant has failed to establish that it based Brown's higher salary on his background and experience. *See Tomka*, 66 F.3d at 1312 (finding defendant did not meet its burden under the EPA where it merely asserted that the male employee's "higher salary resulted from the fact that he had over ten years of experience with a . . . competitor" but did not demonstrate that it "based [the employee's] higher salary on this factor and that experience is a job-related qualification for the position in question"). *Cf.*

*Virgona v. Tufenkian Import-Export Ventures, Inc.*, 2008 WL 4356219, at \*10 (S.D.N.Y. Sept. 23, 2008) (holding that defendants provided a legitimate justification for a challenged wage disparity where the male employee held higher educational degrees than plaintiff, had more years of work experience, and, unlike plaintiff, possessed work experience in the specific role for which he was hired). Although Safe Horizon's decision to pay Brown a higher salary may not have been the result of gender bias, defendant bears the burden of demonstrating that it had a legitimate business reason for the wage differential. *See Cooke v. United States*, 85 Fed. Cl. 325, 350 (Fed. Cl. 2008). Because Safe Horizon has failed to meet this "heavy burden," plaintiff's motion for summary judgment on her EPA claim is granted.

   c. *Willfulness*

   Plaintiff also moves for summary judgment on her claim that defendant's violation of the EPA was willful. "If a plaintiff can establish that the defendant's violation of the Equal Pay Act was willful, she may recover damages for up to three years of back pay prior to filing suit, as compared to two years' back pay without a showing of willfulness." *Lavin-McEleney v. Marist College*, 239 F.3d 476, 483 (2d Cir. 2001) (citing 29 U.S.C. § 225(a)). *See also Pollis v. New Sch. for Soc. Research*, 132 F.3d 115, 119 (2d Cir. 1997) (holding that back pay awards for willful EPA violations are "limited to damages incurred within the three-year limitations period"). Under the EPA, "'[a] new claim accrues each time an employee receives a paycheck under a discriminatory wage policy, but the policy's existence does not make the violation a 'continuing' one, such that the plaintiff can seek back pay beyond the statutory period of two or three years.'" *Virgona*, 2008 WL 4356219, at \* 7 (quoting *Downes v. JP Morgan Chase & Co.*, 2004 WL 1277991, at \* 7 (S.D.N.Y. June 8, 2004)).

Sandor resigned in August 2007 and commenced this action in October 2008. Assuming a two-year limitations period, Sandor would be entitled to back pay from October 2006. If the limitations period is extended to three years, plaintiff would be entitled to damages going back to June 2006, when the first violation occurred.

To establish that Safe Horizon's conduct was willful, Sandor must demonstrate that "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co*., 486 U.S. 128, 133 (1988).

> For purposes of this inquiry, an employer acts willfully where 'the proof shows that an employer was indifferent to the requirements of the governing statute and acted in a purposeful, deliberate, or calculated fashion.' . . . Indifference, in turn, exists where an employer 'acts without interest or concern for its employees' rights under the [governing statute] at the time it decides to [take the action complained of]; that is, without making any reasonable effort to determine whether the decision to [take the action complained of] violates the law.'

*Virgona*, 2008 WL 4356219, at *7 (quoting *Benjamin v. United Merchants & Mfrs., Inc*., 873 F.2d 41, 44 (2d Cir. 1989)). To prevail on the question of willfulness, though, "[a] plaintiff need not show that an employer acted with intent to discriminate or in bad faith." *Pollis*, 132 F.3d at 119.

Johnson testified that he was aware of the EPA and that, "[i]n a nutshell, [it requires] equal pay for equal work." Johnson Dep. 190. Johnson further testified that it was acceptable for employees at Safe Horizon to be paid in the "same range" as someone at the same grade level depending on levels of experience. *Id*. at 191-92. When confronted during his deposition with the actual difference between Brown's and Saunders' salaries, Johnson testified that he felt that Brown's salary was "equal" given the "background and [work] experience that he brought to the organization." *Id*. at 180-81. As indicated above, however, there is no evidentiary support for

the contention that Brown's background and experience rendered him more qualified or capable than plaintiff or Saunders.

Moreover, the evidence is clear that Johnson was alerted by others at Safe Horizon that Brown would be earning more than plaintiff and Saunders for doing the same work. Robinson testified that she advised Johnson that Brown's salary should be the same as Saunders' salary. Robinson Dep. 41. Robinson testified that Johnson told her that "[Brown] would make about the same amount of money on four days that [Saunders] would and it would even out." *Id.* According to Robinson, Johnson further stated that "they would both be earning around mid $40,000 and it would be about the same." *Id.* at 42. Johnson's response – that there would be no pay disparity because Brown would earn about the same salary working four days a week as Saunders earned working five – is simply illogical. Collins also expressed her concern to Johnson that Brown was going to be paid a higher salary than plaintiff and Saunders. Collins Dep. 19-20. Saunders stated in an affidavit that, when she learned from Brown that he was making more money than Saunders and plaintiff, she complained to Johnson but her complaint was ignored. Saunders Aff. ¶ 6; Docket Entry 18-16. Finally, Sandor testified that, when she learned that Brown was earning more money than she was, she complained to Robinson who responded that, because "[Brown] came on through [Johnson], there was nothing she was able to do about [it]." Sandor Dep. 66-67.

With this evidence, plaintiff has met her burden of demonstrating that Safe Horizon's violation of the EPA was willful. The evidence establishes that Johnson was aware of the statute and that other human resources staff members expressed their concern to Johnson about Brown being paid a salary higher than the ones paid to Saunders and plaintiff. Moreover, Johnson's attempt to characterize Brown's salary as "about the same" as the pay earned by plaintiff and

Saunders is contrary to common sense and the undisputed facts. Finally, as Vice President of Human Resources, Johnson was arguably responsible for ensuring compliance with statutes such as the EPA. Plaintiff has thus demonstrated that defendant willfully or recklessly violated the EPA. *See, e.g., Pollis*, 132 F.3d at 120 (concluding that evidence that defendant knew plaintiff was "paid less than comparable males, but did not rectify the situation [was] sufficient to support the jury's finding of reckless or willful violation of the Equal Pay Act").

For all of these reasons, plaintiff has met her burden of demonstrating that defendant's violation of the EPA was willful. Accordingly, plaintiff's motion for summary judgment on this element of her EPA claim is granted as well.

5. Unequal Pay under Title VII

A claim of unequal pay under Title VII is, for the most part, analyzed under the same standards as those that govern claims brought pursuant to the EPA. *Belfi*, 191 F.3d at 139. Like the EPA, Title VII requires a plaintiff to show that "(1) she is a member of a protected class; and (2) she was paid less than non-members of her class for work requiring substantially the same responsibility." *Id*. However, "'a Title VII plaintiff must also produce evidence of discriminatory animus in order to make out a *prima facie* case of intentional sex-based salary discrimination.'" *Id*. (quoting *Tomka*, 66 F.3d at 1313).

As discussed above, plaintiff has established the first two elements of her *prima facie* case. With respect to evidence of discriminatory intent, plaintiff points to the fact that "[a]ll senior management of [Safe Horizon] testified that paying Brown [a] higher salary than plaintiff and Saunders is unfair." Pl. Reply Mem., Docket Entry 26 at 8. Although this evidence may establish that Johnson knew that the pay difference was "unfair"—evidence that supports a finding of willfulness—it does not support a finding that Johnson acted with discriminatory

intent.[9] In support of her failure to promote claim, plaintiff provided substantial circumstantial evidence in addition to her *prima facie* case suggesting that defendant's preferred reasons for promoting Brown and not her were pretextual. Here, however, with respect to her claim of unequal pay, plaintiff offers no circumstantial evidence of discriminatory animus.

Plaintiff's evidence, that Brown was unfairly paid a higher salary than Saunders and plaintiff, is insufficient to demonstrate that the disparity resulted from intentional sex-based discrimination. *Tomka*, 66 F.3d at 1313 (finding that plaintiff failed to proffer evidence of discrimination where plaintiff merely relied upon the fact that three men were paid more than she was); *Fayson v. Kaleida Health, Inc.*, 2002 WL 31194559, at *6 (W.D.N.Y. Sept. 18, 2002) (holding that a wage disparity, standing alone, was insufficient proof of discrimination). Accordingly, because plaintiff has failed to establish her *prima facie* case, defendant's motion for summary judgment on plaintiff's Title VII unequal pay claim is granted.

6. Disparate Impact

Plaintiff alleges that Safe Horizon had a "policy and practice of permitting Johnson the exclusive and unquestionable right to handpick who to promote to [Senior Director] positions without interview[s] or other required tests, and to determine the wages to be paid to managers . . . ." Pl. Mem. 23, Docket Entry 16. Plaintiff contends that this alleged policy and practice had a disparate impact on Hispanic and female employees.

To establish a *prima facie* disparate impact claim under Title VII, Sandor must demonstrate: "(1) the occurrence of certain outwardly neutral practices, and (2) *a significantly adverse or disproportionate impact on persons of a particular type* produced by the defendant's

---

[9] Courts have distinguished a finding of willful or reckless disregard under the EPA from a finding of discriminatory intent under Title VII. *See, e.g., Lavin-McEleney*, 239 F.3d at 483 (noting, in dicta, that a finding of non-willfulness does not necessarily preclude a finding of discriminatory intent); *Pollis*, 132 F.3d at 119 (noting that, in order to establish a willful violation of the EPA,"[a] plaintiff need not show that an employer acted with intent to discriminate or in bad faith").

facially neutral acts or practices." *Tsombanidis v. West Haven Fire Dep't*, 352 F.3d 565, 574-75 (2d Cir. 2003) (internal quotation marks omitted). A showing of discriminatory intent is not required as part of plaintiff's *prima facie* case. *Id*. at 575. Plaintiff, nevertheless, "must prove that the practice actually or predictably results in discrimination as well as a causal connection between the policy at issue and the discriminatory effect." *Abrahams v. MTA Long Island Bus*, 2010 WL 2134288, at *5 (E.D.N.Y. May 25, 2010) (internal quotation marks omitted). Thus, "statistical proof almost always occupies center stage in a *prima facie* showing of a disparate impact claim." *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 160 (2d Cir. 2001).

Plaintiff has failed to establish a disparate impact claim. First, plaintiff has failed to identify any facially neutral policy or practice by Safe Horizon. Instead, plaintiff has merely identified two discrete acts by Johnson and alleges they were undertaken in a discriminatory manner. *See, e.g., Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 572 (2d Cir. 2000) (finding that plaintiff failed to state a *prima facie* case where the "disparity [was] due to discriminatory enforcement of [defendant's] policy, not to the disparate effect of the policy as neutrally applied"). *But see Attenborough v. Constr. & Gen. Bldg. Laborers' Local 79*, 691 F. Supp. 2d 372, 384 (S.D.N.Y. 2009) (holding that plaintiffs established the first prong of a disparate impact claim based upon anecdotal evidence that the hiring director had "a practice of referring friends and relatives to laborer positions without regard to [the Union's written policies]"). Second, even if plaintiff had established the first prong of her *prima facie* case, her claim would fail because she has not offered any evidence, statistical or otherwise, to demonstrate that defendant's practices had a "significantly adverse" impact on the entire protected group of females and Hispanics at Safe Horizon. *See Attenborough*, 691 F. Supp. 2d at 385-86 (finding that plaintiffs failed to establish a disparate impact claim where they offered no statistical

evidence of a racially disparate impact, and noting that plaintiffs themselves could not be considered a representative sample because "[d]isparate impact claims concern the entire population affected by the identified practice, not merely the subset of affected laborers who happen to have brought suit"). It bears noting in this regard that, at least with respect to plaintiff's claim of sex discrimination, that plaintiff has acknowledged that the top earners in Safe Horizon's Human Resources Department were women. *See* Compensation Chart, Docket Entry 7-18. *See also Criley v. Delta Air Lines, Inc.*, 119 F.3d 102, 105 (2d Cir. 1997) (affirming summary judgment in favor of defendant where plaintiffs acknowledged that the policy at issue had "no negative impact" on the entire protected group). In addition, defendant hired Madeline Perez, a Hispanic female, to fill the Senior Director position vacated by Robinson.

For all of these reasons, plaintiff has failed to establish a *prima facie* disparate impact claim. Accordingly, defendant's motion for summary judgment on this claim is granted.

### 7. Intentional Infliction of Emotional Distress

Finally, plaintiff brings a common law claim for intentional infliction of emotional distress ("IIED").[10] To establish an IIED claim, a plaintiff must first demonstrate that defendant's conduct was extreme and outrageous. *Suarez v. Bakalchuk*, 887 N.Y.S.2d 6 (1st Dep't 2009). In this case, defendant's decisions to offer Brown a higher salary than it was paying to plaintiff, and to promote Brown rather than plaintiff to Senior Director, do not amount to outrageous conduct "beyond all possible bounds of decency" and "utterly intolerable in a civilized community." *Murphy v. Am. Home Prods. Corp.*, 58 N.Y.2d 293, 303 (1983). Furthermore, as a general matter, New York courts have held that, "absent a deliberate and

---

[10] Plaintiff appears to confuse liability for a claim of IIED and damages that may be awarded at trial based upon a finding that plaintiff suffered emotional distress as a result of defendant's alleged discrimination. *See* Pl. Mem. 24-25. If plaintiff's failure to promote claim proceeds to trial, plaintiff may still be awarded compensatory damages for emotional distress even though she has failed to establish a claim for intentional infliction of emotional distress.

malicious campaign of harassment or intimidation[,] . . . adverse employment actions, even those based on discrimination, are not sufficient bases for [IIED] claims." *Emmons v. City Univ. of New York*, 715 F. Supp. 2d 394, 424 (E.D.N.Y. 2010) (citing cases) (internal quotation marks omitted). Plaintiff concedes that she was never subjected to discriminatory remarks at Safe Horizon, Sandor Dep. 129, and plaintiff's other allegations are insufficient to establish a "deliberate and malicious" campaign of discrimination. For all of these reasons, defendant's motion for summary judgment on plaintiff's IIED claim is granted.

## Conclusion

For all of the reasons discussed above,

1) The parties' cross-motions for summary judgment on plaintiff's failure to promote claims, brought pursuant to Title VII and 42 U.S.C. § 1981, are DENIED.

2) Plaintiff's motion for summary judgment on liability for her claim of willful violation of the Equal Pay Act is GRANTED.

3) Defendant's motion for summary judgment on plaintiff's disparate impact claim is GRANTED.

4) Defendant's motion for summary judgment on plaintiff's intentional infliction of emotional distress claim is GRANTED.

**SO ORDERED.**

_____/s/_____

**STEVEN M. GOLD**
**United States Magistrate Judge**

Brooklyn, New York
January 12, 2011

U:\IRM 2008-2009\Sandor v. Safe Horizon\sandor v. safe horizon_v1.doc

36